IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EXELON GENERATION CO., LLC; )
EXELON BUSINESS SERVICES CO., INC.; )
and COMMONWEALTH EDISON CO., )
)
        Plaintiffs, )
)
  vs. ) Case No. 07 C 968
)
LOCAL 15, INTERNATIONAL )
BROTHERHOOD OF ELECTRICAL )
WORKERS, AFL-CIO, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

      Both the plaintiffs and the defendant in this case have moved for summary judgment. Each side has filed its summary judgment motion and supporting materials, and each side has responded to the other side's motion. The briefing schedule originally entered by the Court contemplated a reply brief on each side. The Court did not realize at the time, however, that each side's motion for summary judgment essentially presented the flip side of the opposing side's motion. Had the Court understood that, it would not have entered a briefing schedule permitting, in effect, six briefs addressed to the same points (three per side); rather, it would have entered a briefing schedule allowing for four briefs altogether – a motion and brief by one side, a cross-motion and brief by the other side, a combined reply/response by the initial moving party, and a final reply by the cross-moving party. Now that the Court realizes

that the motions are essentially mirror images of each other, and now that each side has filed two briefs, no more is required.  The Court also notes that the issues to be determined are issues of law and issues of application of law to undisputed facts; under the circumstances, further briefing would not illuminate the issues beyond what has already been accomplished in two rounds of briefing.  The remainder of the briefing schedule is vacated, and the Court will now proceed to rule on each side's motion.

For the reasons stated below, the Court grants defendant's motion for summary judgment and denies plaintiffs' motion for summary judgment.

**Facts**

Plaintiffs Exelon Generation Co., Exelon Business Services Co., and Commonwealth Edison Co. (collectively "Exelon") are affiliated entities in the business of electrical power generation and supply.  Defendant Local 15 of the International Brotherhood of Electrical Workers is the representative of over 5000 Exelon hourly employees.  Exelon and Local 15 are parties to a collective bargaining agreement, which includes various side agreements called "memoranda of agreement" entered into from time to time.  The CBA provides that Local 15 is the exclusive bargaining representative of all employees contained in the bargaining unit defined in the CBA; it is silent regarding whether Local 15 represents former bargaining unit employees who have retired.

The CBA provides that "[s]hould any dispute or difference arise between the Company and the Union or its members as to the interpretation or application of any of the provisions of this Agreement or with respect to job working conditions," the dispute is to be settled through a grievance procedure established under the CBA.  Pl. Ex. 2,
2

Art. VIII § 5.  The grievance procedure includes four steps.  The first step is a "local investigation" involving union stewards and department-level supervisory personnel of Exelon; the second step involves consideration by a "business unit joint grievance committee" consisting of union business representatives and Exelon managerial personnel; the third step consists of review of the grievance by a committee consisting of senior managers of the union and Exelon; and the fourth step involves arbitration of the grievance by an impartial arbitrator selected from a list provided by the Federal Mediation and Conciliation Service.  The issue in this case concerns whether a particular dispute is subject to arbitration.

The CBA contains a provision permitting eligible management and union employees and retirees to elect certain medical insurance benefits financed largely by contributions from Exelon.  In August 2003, Exelon announced that starting in 2004, it would require retirees to contribute a greater amount to covered medical expenses, and it implemented those changes in January 2004.  In September 2005, Local 15 filed a grievance alleging that Exelon had violated the CBA in imposing the changes to retiree medical benefits (the grievance also referenced changes to benefits for active employees, but those are not at issue in this case).  The grievance did not identify any particular person on whose behalf it was filed; a blank on the grievance form for "name of employee(s)" was filled in with the phrase "for the good of the union."  Def. Ex. 7.  It is unclear exactly how Exelon responded to the grievance at the step one stage, though it is obvious that Exelon denied the allegation.

Local 15 filed the grievance at step two in November 2005, using the same language it had used in the step one grievance form.  Exelon responded by stating that

3

"[t]here has been no violation of the [CBA] as alleged. This grievance and the relief sought are denied." Def. Exs. 9 & 10. Local 15 filed the grievance at step three in late November 2005, again using the same language, and in February 2006, Exelon gave the same response it had given at step two. Def. Exs. 11 & 12.

On February 19, 2006, Local 15 submitted a request for arbitration to the FEMS. Def. Ex. 13. In June 2006, a business representative of Local 15 requested that Exelon supply the current mailing address of each retiree who formerly had been a member of the bargaining unit represented by Local 15. Def. Ex. 1, Stipulated Fact 25. Exelon rejected this request in early July 2006 in a letter stating that Local 15 did not represent retirees because they not part of the bargaining unit. Pl. Ex. 1, attached ex. 4. Later in July 2006, a lawyer for Local 15 renewed the request for information, arguing that because Local 15 was seeking to enforce rights negotiated on behalf of persons that were, at the time, members of the bargaining unit, it could enforce their rights. Pl. Ex. 10. Exelon did not alter its position in response to this letter.

It is undisputed that Exelon participated in the selection of an arbitrator and hearing dates for the grievance. Def. Ex. 1, Stipulated Fact 27. In October 2006, the arbitrator sent Local 15 and Exelon a letter in which he accepted the appointment and proposed hearing dates in April and May 2007. Pl. Ex. 11. Exelon filed this suit in March 2007, seeking a declaratory judgment that it was not required to arbitrate the dispute.

The parties have stipulated that Local 15 does not now have the consent of any retirees it has not contacted and that it is seeking the names and addresses of retirees affected by Exelon's changes to the medical benefit plan to determine whether they will

4

consent to Local 15's representation of their interests in arbitration. Def. Ex. 1,
Stipulated Fact 28. There are, however, some retirees who have consented to Local
15's representation. Specifically, it is undisputed that seven retired bargaining unit
employees who are the members of what amounts to a steering committee of the
ComEd/Exelon Retired Employee Association supported Local 15's decision to file the
grievance over retiree medical benefits. *See* Def. LR 56.1 Stat. ¶¶ 14-17; Pl. LR 56.1
Resp. ¶¶ 14-17. It is likewise undisputed that at an Association meeting in March 2007,
this same committee provided the Association's members with a status report regarding
the arbitration, and that no one in attendance objected to Local 15's representation of
retirees' interests.[1] There is no record, however, of what retirees attended the meeting.
*See* Def. LR 56.1 Stat. ¶ 34; Pl. LR 56.1 Resp. ¶ 34. Finally, it is undisputed that no
affected retiree has brought an individual claim against Exelon over the changes to
retiree medical benefits. *See* Pl. LR 56.1 Stat. ¶ 35; Def. LR 56.1 Resp. ¶ 35.

## Discussion

On a motion for summary judgment, the Court views the facts in the light most
favorable to the non-moving party, drawing reasonable inferences in its favor, and may
not grant summary judgment unless there is no genuine issue of material fact and the
moving party is entitled to judgment as a matter of law. *See, e.g., Harlow v. Fitzgerald,*
457 U.S. 800, 816 n.26 (1982).

In its motion for summary judgment, Exelon argues that the grievance is not
subject to arbitration because Local 15 has not received the consent of all the affected

---

[1] The Court need not and does not conclude that attendees at the meeting consented to representation by Local 15.

retirees to represent their interests, and also because Exelon has not consented, either expressly or implicitly, to arbitrate the grievance, which Exelon argues falls outside of the CBA's grievance procedure. In its motion for summary judgment, Local 15 argues that the grievance is an arbitrable dispute because it is within the CBA's grievance procedure and that in any event, Exelon waived its right to challenge arbitrability by participating in steps one through three and part of step four of the procedure. Local 15 also argues that it has the consent of at least some of the affected retirees and that it does not need the consent of all of them before the arbitration may proceed.

The first question is whether the dispute falls within the scope of the grievance procedure provided in Section VIII of the CBA. There is no question that it does. Section VIII, quoted earlier, says that any dispute "as to the interpretation or application of any of the provisions of this Agreement or with respect to job working conditions" is subject to the grievance / arbitration procedure. It is not genuinely disputed that the controversy over retiree medical benefits concerns the interpretation and/or application of the CBA (which includes the memoranda of understanding referenced earlier). Exelon seems to suggest that this clause's reference to "job working conditions" limits its coverage to disputes regarding current employees. This interpretation is incorrect; it reads the word "or" out of the quoted provision.

The second question is whether Local 15 may represent the retirees, or any of them. Under long-established principles of federal labor law, retirees are not employees included in a bargaining unit and thus are outside the scope of the requirement of collective bargaining imposed by federal law. *See Allied Chem. & Alkali Workers of Am., Local Union No. 1 v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 172 (1971). This is

so even when, as in this case, an employer modifies benefits that were originally established through collective bargaining. *Rossetto v. Pabst Brewing Co.*, 128 F.3d 538, 540 (7th Cir. 1997). When a dispute over retiree benefits are at issue, dealings between a union and an employer are permissive rather than mandatory subjects of bargaining. *See id.*

As this Court stated in its decision denying Local 15's motion to dismiss in this case,

> [b]ecause retirees are not part of the bargaining unit for whom "the union is the exclusive bargaining representative," the Union does not have the "power to negotiate with management" on retirees' behalf. [*Rossetto*, 128 F.3d] at 539. Rather, claims for benefits in a dispute like this one "belong to the retirees individually." *Id.*
>
> For this reason, courts require a union to obtain retirees' consent before it may pursue a claim on their behalf. *See Rossetto*, 128 F.3d at 541; *see also, United Steelworkers of America, AFL-CIO v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 283 (6th Cir. 2007); *Cleveland Elec. Illuminating Co. v. Utility Workers, Local 270*, 440 F.3d 809, 818 (6th Cir. 2006). In the Seventh Circuit, a union "does not have any right to represent the retirees . . . unless each of the retirees assents to [the union's] representation." *Rossetto*, 128 F.3d at 541.

*Exelon Generation Co. v. Local 15, Int'l Brotherhood of Electrical Workers, AFL-CIO*, No. 07 C 968, 2007 WL 2254306, at *1 (N.D. Ill. July 9, 2007).

Picking up on the statement in *Rossetto* (and quoted by this Court) that the union in that case could represent retirees only if "each of the retirees assents," *Rossetto*, 128 F.3d at 541, Exelon argues that in this Circuit, a union may pursue a grievance for retirees only if *all* similarly-situated retirees consent (and, it argues, the consent must be given in advance of initiation of the grievance procedure). Local 15 disagrees, saying that not all retirees are required to consent in order for Local 15 to represent any of

7

them.

To discern the correct interpretation of *Rossetto*, some background regarding that case is required. In *Rossetto,* a union, District 10 of the International Association of Machinists, filed a suit seeking a declaratory judgment that an employer, Pabst Brewing Co., was required to arbitrate a dispute over its unilateral elimination of retiree medical and death benefits. The trial court certified a class consisting of all forty-one of the affected retirees, with District 10 and four of the retirees acting as class representatives, and it later granted the plaintiff class's motion to compel arbitration of the grievance. The issue of District 10's standing to represent the retirees was raised for the first time on appeal, by the court itself. The court first noted that under *Pittsburgh Plate Glass*, the retirees were not members of the bargaining unit represented by the union. The court stated that "[b]ecause District 10 is not the exclusive bargaining representative of the forty-one retirees that make up the class, any claims for benefits here belong to the retirees individually, and the retirees may deal directly with Pabst in pursuing such claims." *Rossetto*, 128 F.3d at 540. The court went on to say, however, that

> [t]his is not to say that a union can never take retirees' claims to arbitration. Although a union has no duty to represent retirees, and retirees need not submit to union representation, retirees are free to make a union their agent if they so choose. And, of course, retiree benefits are a permissive subject of bargaining - a union may bargain for retirees if the employer agrees. *Pittsburgh Plate Glass*, 404 U.S. at 181 n. 20, 92 S. Ct. at 398 n. 20; *see also Merk v. Jewel Cos.*, 848 F.2d 761, 766 (7th Cir.) ("[U]nions may bargain on behalf of retirees if the employer is willing, although the retirees need not accept the offer of representation. Former employees might choose the union as their agent for purposes of implementing or compromising claims arising under a collective bargaining agreement.") (citations omitted), *cert. denied*, 488 U.S. 956, 109 S. Ct. 393, 102 L. Ed. 2d 382 (1988). What we are saying is that any right District 10 has to pursue arbitration of the retirees' grievance must come from the retirees. And, of course, Pabst must agree to deal with District

8

10 in this context.

*Id.* at 540. In concluding its decision, the court reiterated that

> District 10 does not have any right to represent the retirees making up the class in this case unless each of the retirees assents to its representation. This record contains no evidence in this regard. Just because District 10 purports to represent the retirees does not mean that the retirees have assented to its representation. Moreover, even if we were to find consent by the retirees, there is no evidence that Pabst has agreed to bargain with District 10.

*Id.* at 541.

According to Exelon, the Seventh Circuit's statement that the union could not represent the retirees in *Rossetto* "unless each of the retirees assents to its representation" establishes a requirement that unless *all* retirees affected by a grievance agree that their former union may pursue the grievance, the union cannot represent *any* of the retirees. This interpretation takes the Seventh Circuit's statement out of context. The court did not say that the union could not represent any retirees unless all of them agreed; rather it said that the union could not represent "*the retirees making up the class in this case* unless each of them consents to its representation." *Id.* (emphasis added). In short, in view of the fact that the plaintiff class in *Rossetto* included all the affected retirees, the union had to have, in that case, the consent of all of them to proceed. Viewed in this context, the court was simply making a straightforward observation that unless a particular retiree agrees to be represented by a union, the union cannot act on his behalf. It was not setting forth a requirement, applicable to all such cases, that unless all affected retirees consent, no single retiree may seek to have the union act on his behalf.

Exelon argues that any resolution via arbitration of grievances on behalf of any

9

retirees will affect all of them, and that a rule that a union must act for all retirees or cannot act for any of them thus prevents a union from "hijack[ing] the retirees' right to pursue their statutory claims" on their own behalf, a concern raised by the court in *Rossetto*. *Rossetto*, 128 F.3d at 541. The Court disagrees. As Local 15 argues, a retiree who does not elect representation by his former union could not possibly be barred from bringing his own suit by an adverse outcome in a grievance proceeding instituted on behalf of other retirees. *See Meza v. General Battery Corp.*, 908 F.2d 1262, 1272 (5th Cir. 1990) (employee who did not consent to union's representation not bound by adverse outcome in union's prior unsuccessful lawsuit) (*cited in Rossetto*, 128 F.3d at 540). *See generally Hansberry v. Lee*, 311 U.S. 32, 40 (1940) ("It is a principle of general application in Anglo-American jurisprudence that one is not bound by a judgment in personam in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."). The fact that the union might make, in an arbitration undertaken on behalf of some retirees, precedent that a court or arbitrator in a later case might consider does not require establishment of a rule that in such a situation, the union cannot act unless it has the okay from all persons potentially affected. This would be the rough equivalent of a legal rule that any time an individual lawsuit might affect the rights of others similarly situated, the lawsuit *must* be maintained as a class action. There is no basis in the law to impose such a requirement.

In addition, seeking representation by one's former union presents a retiree with obvious advantages as compared with the alternative of bringing suit in court – specifically, dramatically reduced expense and the ability to forego retaining private

counsel.  Requiring *all* retirees to consent before *any* retiree may be represented by the union effectively would permit a single retiree, for any reason or no reason, to "hijack" an impecunious retiree's ability to pursue his legal rights.

In short, Exelon's proposed rule finds no support in *Rossetto* or any other case.  The Court therefore rejects Exelon's contention that the absence of consent by all of the affected retirees in this case prevents Local 15 from acting on behalf of any of them.  And because Local 15 had demonstrated that it had the consent of those retirees who served on what we have referred to as the steering committee, it may pursue arbitration on their behalf.

The last question is whether Exelon agreed to arbitrate retiree grievances generally, or this one in particular.  Local 15 contends that via the CBA, Exelon agreed to arbitrate all grievances regarding disputes over the interpretation or application of the CBA, an agreement that Local 15 says encompasses the present dispute.  Alternatively, Local 15 contends, Exelon either impliedly agreed to arbitrate the grievance or waived any objection to arbitration by participating in steps one through three of the grievance process and part of step four.

The Court agrees with Local 15 that the CBA's arbitration provision itself, read in context, demonstrates Exelon's consent to arbitrate retiree grievances over the interpretation and application of the CBA.  It is true, as Exelon argues, that the Court cannot read the grievance / arbitration provision in isolation from the rest of the agreement.  *See Minch v. City of Chicago*, 486 F.3d 294, 302-03 (7th Cir. 2007).  The fact of the matter, however, is that the CBA (which includes the memoranda of understanding) includes provisions that apply specifically to retirees.  With that in mind,

11

when the CBA says that disputes over its interpretation or application are subject to arbitration, that necessarily includes disputes over retiree rights that the CBA confers. In short, by entering into a CBA that included terms according rights to retirees as well as a broad obligation to engage in arbitration over disputes about the CBA, it consented to arbitration of grievances brought on behalf of retirees.

*Rossetto* is not to the contrary. In that case, the arbitration provision at issue applied only to "grievances or misunderstandings between the Company *and its employees.*" *Rossetto*, 128 F.3d at 539 (emphasis added). Thus when the Seventh Circuit stated that in order for arbitration to take place, "Pabst must agree to deal with District 10 in this context," *id.* at 540, it was acknowledging the fact that the company had not previously consented to arbitrate retiree grievances. The arbitration provision in the Exelon - Local 15 CBA, however, is different.

In addition, as the Sixth Circuit said in a similar case (in which it followed *Rossetto* in concluding that a union may not represent a retiree in a grievance absent the retiree's consent), in labor law cases involving whether a particular dispute is subject to a contractual arbitration clause,

> the Supreme Court [has] found that it should be presumed that the parties intended to arbitrate the dispute unless there is "positive assurance" that the arbitration clause does not cover the matter. *Id.* "[I]n cases involving broad arbitration clauses the Court has found the presumption of arbitrability 'particularly applicable,' and only an express provision excluding a particular grievance from arbitration or 'the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *See United Steelworkers v. Mead Corp., Fine Paper Div.*, 21 F.3d 128, 131 (6th Cir.1994) (quoting [*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)]).
>
> This court has held that the presumption of arbitrability is particularly applicable where the arbitration clause provides for arbitration of any

12

> controversy involving the interpretation of the CBA. *See Commc'ns Workers v. Mich. Bell Tel. Co.*, 820 F.2d 189, 193 (6th Cir. 1987); *see also Mead Corp.*, 21 F.3d at 132. In the agreement before this court, the parties clearly bargained for retirees' health benefits. The relevant provisions are found in Article X, section 3, of the CBA. The grievance procedures are set out in Article V of the CBA. Section 1 of Article V provides that "the following grievance procedure shall be used by the Union to settle or adjust any disagreement concerning the interpretation or application of this Agreement." There follows a set of procedures beginning with a grievance being filed and ending with arbitration. Nothing in the CBA expressly excludes retirees' benefits from arbitration.

*Cleveland Elec.,* 440 F.3d at 814-15. The same is true in this case. In view of the breadth of the arbitration provision of the Exelon - Local 15 CBA, as well as the presumption of arbitrability, the Court finds that Exelon consented to arbitrate retiree grievances involving interpretation or application of the CBA. Because Local 15 was authorized to represent the several retirees referenced earlier in this decision, Exelon was required to arbitrate the grievance insofar as it concerned the rights of those retirees. For this reason, the Court need not deal with Local 15's alternative contention that Exelon waived any objection to arbitrability.

**Conclusion**

For the reasons stated above, the Court grants defendant's motion for summary judgment [docket no. 34] and denies plaintiffs' motion for summary judgment [docket no. 39]. Defendant's motion to compel discovery is terminated as moot [docket no.

13

29].[2]  The Clerk is directed to enter judgment in favor of the defendant.

                                                               _____
                                                               MATTHEW F. KENNELLY
                                                               United States District Judge

Date:  December 3, 2007

---

[2]  Local 15 previously moved to compel Exelon to provide current contact information for retirees affected by the benefit changes at issue.  The motion is now moot because Exelon is not entitled to relief in this court.  The matter thus will be one to be decided by the arbitrator(s) in the first instance.

14